Michael L. Slack (Texas Bar No. 18476800)
mslack@slackdavis.com
*Pro Hac Vice Anticipated*
John R. Davis (Cal. Bar No. 308412)
jdavis@slackdavis.com
*Pro Hac Vice Anticipated*
SLACK & DAVIS, LLP
2705 Bee Cave Road, Suite 220
Austin, TX 78746

Thomas J. Brandi (Cal. Bar No. 53208)
tjb@brandilaw.com
Brian J. Malloy (Cal. Bar No. 234882)
bjm@brandilaw.com
THE BRANDI LAW FIRM
354 Pine Street, Third Floor
San Francisco, CA 94104
415-989-1800

***Attorneys for Plaintiff Todd Johnston***

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| TODD JOHNSTON, individually and on behalf of a class of similarly situated persons, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>UBER TECHNOLOGIES, INC., a Delaware Corporation, )<br><br>Defendant. ) | Case No. _____<br><br><br>CLASS ACTION COMPLAINT<br><br><br>JURY DEMAND |

## CLASS ACTION COMPLAINT

Page **1** of 14

Plaintiff, Todd Johnston, individually and on behalf of all others similarly situated (the "Class"), brings this WARN Act class action against Defendant Uber Technologies, Incorporated ("Uber" or "Defendant"), and alleges, based on personal knowledge, investigation, and information and belief as to all other matters, as follows:

## I.    PARTIES

1.    Plaintiff Todd Johnston is a citizen of Texas, domiciled in Austin, Texas. Plaintiff Johnston began working as an Uber Driver starting in May 2015. Plaintiff Johnston drove for Uber as his primary source of income until May 9, 2016, when Uber "shuttered operations" in Austin. As a result of Uber's mass layoff and/or closing of its Austin operations, Plaintiff Johnston's employment with Uber has been terminated.

2.    Defendant Uber Technologies, Inc. is a Delaware corporation with its headquarters and principal place of business located in San Francisco, California.

## II.    JURISDICTION & VENUE

3.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, specifically the Worker Adjustment and Retraining Notification (WARN) Act, 29 U.S.C. § 2102 *et seq*. The WARN Act grants federal district courts original jurisdiction over WARN Act cases, 29 U.S.C. § 2104(a)(5).

4.    Venue is proper in this district pursuant to: 28 U.S.C. § 1391(b)(1) because Defendant Uber resides in this District; § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim occurred" in this District; and § 1391(b)(3) because Defendant Uber is subject to the personal jurisdiction of this Court. Venue is also proper pursuant to 29 U.S.C. § 2104(a)(5) because Defendant Uber "transacts business" in this District.

## III.    INTRADISTRICT ASSIGNMENT

5.    This action is appropriately assigned to the San Francisco Division because it is

**Class Action Complaint**

related to a pending case *O'Connor et al. v. Uber Tech., Inc.*, No. 3:13-cv-3826-EMC, which is assigned to the San Francisco Division.

## IV.    FACTUAL ALLEGATIONS

### A.  Defendant Uber's Austin, Texas Operations

6.    Uber is a San Francisco, California-based car service promoting itself as a transportation networking company ("TNC"). By means of its mobile application software (the "Uber App"), Uber provides a means to enable a person who seeks transportation to a destination via automobile ("Rider(s)") to be picked up by a nearby person who is willing to transport the Rider to his or her destinations via automobile ("Driver(s)").

7.    Uber is by far the largest ride-hailing platform and is arguably a monopoly in many of the markets it serves.[1] A private company, Uber was most recently valued at $62.5 billion in December 2015 according to a New York Times article.[2] Uber's only other meaningful competitor is Lyft Inc., another private company valued at approximately $5.5 billion.

8.    Uber began operating in Austin, Texas on or about June 3, 2014, and quickly became the dominant ride-hailing service in the Austin market.

9.    As of May 2016, Uber officials asserted that Uber had over 10,000 Drivers in Austin.[3]

---

[1] David Gelles & Mike Isaac, *Challenging Uber, Lyft Bets on a Road Wide Enough for Two*, N.Y. TIMES (Jan. 9, 2016), http://www.nytimes.com/2016/01/10/technology/challenging-uber-lyft-bets-on-a-road-wide-enough-for-two.html.
[2] Mike Isaac & Leslie Picker, *Uber Valuation Put at $62.5 Billion After a New Investment Round*, N.Y. TIMES: DEALBOOK (Dec. 3, 2015), http://www.nytimes.com/2015/12/04/business/dealbook/uber-nears-investment-at-a-62-5-billion-valuation.html?_r=0.
[3] Sarah Ashley O'Brien & Jackie Wattles, *Austin Drivers in the Lurch after Uber, Lyft Exit*, CNN: MONEY (May 10, 2016, 8:41 AM), http://money.cnn.com/2016/05/09/technology/austin-uber-lyft-drivers/.

**Class Action Complaint**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.  The Defeat of Proposition 1 and Defendant Uber's Termination of Austin Operations**

10.     On or about December 17, 2015, Austin City Council voted 9-2 to approve an Ordinance (City Ordinance No. 20151217-075) requiring so-called "transportation network companies" (including Uber and Lyft) to, among other things, subject their drivers to a fingerprint-based criminal background check. To afford affected companies ample time to become compliant, the Ordinance did not become effective until February 1, 2016, and both Uber and Lyft were given twelve (12) months, until February 1, 2017, to gradually phase their fleets into compliance.

11.     Instead of complying with the new Ordinance, Uber and Lyft created a political action committee ("PAC") called Ridesharing Works for Austin. Uber and Lyft invested approximately $8.6 million into the most expensive political campaign in Austin history in an attempt to defeat the Ordinance. Upon information and belief, Defendant Uber gave significant amounts of money went to politically conservative right-wing PACs and individuals described as "experienced Republican operatives" in efforts to both defeat the Ordinance and to personally ridicule and politically attack Austin City Council members in support of the Ordinance, including specifically Austin City Councilwoman and Democrat Ann Kitchen. For example, in November 2015, before the City Council took up the Ordinance, Uber debuted "Kitchen's Uber" on its App, offering a mock horse-and-buggy ride service carrying the message that Kitchen wants to "impose 19th Century regulations on 21st Century technology."

12.     Having secured the requisite 20,000 petition signatures, a public referendum occurred on Saturday May 7, 2016. Proposition 1 (to repeal the Ordinance and supported by Uber and Lyft) was rejected by Austin voters, 56% of whom voted against Proposition 1.

13.     On Monday May 9, 2016, at 8am, Uber indefinitely terminated its Austin

**Class Action Complaint**

operations. As explained in a statement distributed by email to Uber's Austin Riders and Drivers, "[d]isappointment does not begin to describe how we feel about **shuttering operations in Austin**." (emphasis added).

14.     The result is that thousands of Austin Uber Drivers have lost their jobs and incomes. As stated in the Huffington Post (ironically, Arianna Huffington sits on Uber's Board of Directors), "the real 'losers' in this situation are the thousands of full-time drivers in Austin who have just been put out of work with less than 48 hours' notice."[4]None of these Drivers was provided any adequate WARN Act notice of Uber's decision to "shutter[] operations" in Austin.

**C.  Defendant Uber's Drivers are "Affected Employees" Pursuant to the WARN Act and/or are Employees Pursuant to California Law**

15.     The WARN Act contains its own *sui generis* definition of "affected employees" who are entitled to WARN Act notice. Affected employees are defined as having a reasonable expectation of suffering an employment loss due to a plant closing or mass layoff, 29 U.S.C. § 2101(a)(5), while an "employment loss" means any one of the following: (A) termination without cause, voluntary departure, or retirement; (B) a layoff exceeding 6 months; or (C) a reduction in work hours of more than 50 percent during each month of any 6-month period, § 2101(a)(6).

16.     Plaintiff and putative class members, as defined *infra*, are "affected employees" because they suffered an "employment loss" as a result of Uber's "plant closing" and/or "mass layoff" in Austin, Texas.

17.     Moreover, Plaintiff and putative class members are employees of Defendant Uber pursuant to common law:

---

[4] Andrew Watts, *The Real Reason Uber and Lyft Left Austin*, HUFFINGTON POST: BUSINESS (May 10, 2016, 2:09 PM), http://www.huffingtonpost.com/andrew-watts/the-real-reason-uber-and-lyft-left-austin_b_9889406.html.

**Class Action Complaint**

a) Defendant Uber, through its policies and procedures, exhibits control over Uber's Drivers and the manner and means by which Drivers provide Uber's service. Those policies and procedurals include, but are not limited to, procedure manuals, instructional videos, control over Driver scheduling, the authority to set prices for the service;

b) Defendant Uber, through its policies and procedures, maintains the right to discharge Drivers at will, without cause. As stated in Uber's applicable January 2, 2016 Terms of Service, "Uber may immediately terminate these Terms or any Services with respect to you, or generally cease offering or deny access to the Services or any portion thereof, at any time for any reason[;]"

c) Defendant Uber and its Drivers are not engaged in a distinct occupation or business. Rather, Defendant Uber's Drivers implement and are integral to Uber's core business of providing ride-hailing services;

d) Defendant Uber's Drivers are not required to utilize specialized skills in performing services for Uber;

e) Uber supplies critical instrumentalities of performing the service (i.e., the Uber App and other trademarks);

f) Drivers perform services for Uber for an indefinite period of time; and,

g) The work performed by Uber's Drivers is an integral component of Uber's regular business operations.

18.     Indeed, just recently, on or about April 21, 2016, Uber entered into a preliminary $100 million settlement of class allegations that Uber's Drivers constitute employees (and not independent contractors) and are thus entitled to employee benefits under California law.

19.     Prior to the settlement, the court presiding over that matter had found – in denying summary judgment to Uber – that "the case law [of California] makes abundantly clear that the drivers are Uber's presumptive employees" and concluded that Uber could not overcome this presumption. Uber's January 2, 2016 Terms of Service provide that "[t]hese Terms are governed by and construed in accordance with the laws of the State of California, U.S.A., without giving effect to any conflict of law principles …."

20.     Defendant Uber's Austin Drivers constitute "affected employees" or "aggrieved employees" pursuant to the WARN Act as well as employees pursuant to California law.

**Class Action Complaint**

**D.  Defendant Uber's Violations of the WARN Act**

21.     The Worker Adjustment and Retraining Notification (WARN) Act requires that certain employers give employees sixty (60) days notice prior to effectuating either a "plant closing" or "mass layoff" as those terms are defined and construed in the WARN Act and related U.S. Department of Labor ("DOL") regulations.

22.     A violation of the WARN Act occurs when an employer does not provide the proper notice within the proper timeframe. What constitutes proper notice is described in the WARN Act, DOL regulations, and interpretative case law. At a minimum, however, such notice must contain a reference to the WARN Act and be delivered directly from the employer to the employee (or his or her representative).

23.     For WARN Act violations, Congress, as a matter of continuing employment policy favoring collective action, has specifically provided a statutory right that class or representative actions be available to WARN Act litigants, to be prosecuted in federal district courts. 29 U.S.C. § 2104(a)(5).

24.     The principal remedy for WARN Act violations is back pay for up to sixty (60) days for all eligible employees. Aggrieved employees are also entitled to benefits and covered medical expenses.

25.     Defendant Uber is an "employer" as that term is defined in the WARN Act. Notably, not even accounting for alleged Driver employees, Uber's LinkedIn page states that Uber has between "5,001-10,000 employees."

26.     Defendant Uber's Austin Drivers constitute "affected employees" or "aggrieved employees" pursuant to the WARN Act as well as employees pursuant to California law.

27.     Defendant Uber's, in its own words, "shuttering [of] operations in Austin"

constitutes a covered event under the WARN Act as either a "plant closing" or a "mass layoff" as those terms are defined in the WARN Act.

28.     Defendant Uber has not, including up to the present, provided any form of WARN Act notice to its Austin Drivers.

### E.  Allegations Regarding Named Plaintiff

29.     Plaintiff Todd Johnston began driving for Uber in Austin, Texas, in or around May 2015.

30.     Plaintiff Todd Johnston primarily provided rides between Austin-Bergstrom International Airport and downtown Austin. The vast majority of Plaintiff's Uber rides originated within the affected Austin area.

31.     Plaintiff Todd Johnston's Uber Driver rating was 4.88 and he had not been deactivated or threatened with deactivation by Uber at any point.

32.     Between May 2015-May 2016, Plaintiff Todd Johnston averaged approximately 30 hours/week driving for Uber. In the last ninety (90) days, Plaintiff Johnston averaged approximately 20 hours/week driving for Uber.

33.     Since Uber "shutter[ed] operations" in Austin, Plaintiff Johnston has been looking for other work.

34.     Plaintiff Johnston was not provided WARN Act notice by Uber at any point regarding Uber's decision to effectuate a "plant closing" or "mass layoff" in Austin.

35.     Plaintiff Johnston is entitled to 60 days' back pay and benefits.

### V.     CLASS REPRESENTATION ALLEGATIONS

36.     Plaintiff brings this action pursuant to 29 U.S.C. § 2104(a)(5) and pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3) on behalf of himself and on behalf of the Class defined below (subject to modification). The proposed Class is:

**Class Action Complaint**

**All persons with an active Uber account as of May 9, 2016, who operated as an Uber Driver in the affected Austin area between May 9, 2013 and May 9, 2016.**

37.     Excluded from the Class are: (1) Drivers who deactivated or had their accounts deactivated prior to May 9, 2016; (2) Drivers who were terminated, resigned, or retired prior to May 9, 2016; (3) Defendants and their officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries and assigns, and entities in which Defendants have a controlling interest; (4) Governmental entities; (5) Class counsel; and (6) all judicial officers and administrative staff presiding over this matter.

38.     Said definitions and/or exclusions may be further defined or amended by additional pleadings, evidentiary hearings, class certification motions and/or hearings, and orders of this Court.

39.     **Numerosity**. The members of the Class are so numerous that separate joinder of each member is impracticable.  Plaintiff does not know the exact number of members in the Class, but based upon information and belief, Plaintiff reasonably believes that Class Members number at a minimum in the thousands. In fact, representatives for Uber have stated that Uber had 10,000 Austin Drivers as of May 9, 2016.

40.     **Commonality**. The claims of Plaintiff raise questions of law or fact common to the questions of law or fact raised by the claims of each member of the Class.  Plaintiff's claims arise from the same event or set of events that gives rise to the claims of the Class members.  The questions of law and fact common to Plaintiff and the Class predominate over questions affecting only individual Class members, and include, but are not limited to, the following:

- Is Defendant Uber an "employer" pursuant to the WARN Act?

**Class Action Complaint**

- Are Defendant Uber's Drivers "affected employees" or "aggrieved employees" pursuant to the WARN Act?
- Are Defendant Uber's Drivers employees under California common law?
- Did Uber's withdrawal from Austin constitute a "plant closing" as defined in the WARN Act?
- Did Uber's withdrawal from Austin constitute a "mass layoff" as defined in the WARN Act?
- Is the affected Austin area considered a "single site of employment" as defined in the WARN Act?
- Did Uber provide legally sufficient WARN Act notice to its Drivers?
- When should have Uber provided WARN Act notice to its Drivers?
- If Uber did provide WARN Act notice to its Drivers, is Uber entitled to claim any basis for a reduction in the notice period?
- What is an appropriate classwide formula by which to calculate individual class members' damages upon submission of a claim?

41.     **Typicality**. The claims of Plaintiff are typical of the claims of each member of the Class. Plaintiffs' and Class Members' claims all arise from the same event or set of events. All Class Members, including Plaintiff, have the same or similar injury in that Defendants failed to comply with the WARN Act.

42.     **Adequacy of Representation**. Plaintiff can fairly and adequately protect and represent the interests of each member of the Class. Plaintiff fits within the class definition and Plaintiff's interests do not conflict with the interest of the members of the Class Plaintiff seeks to represent. Plaintiff is represented by experienced and able attorneys at the law firms of Slack & Davis, LLP, of Austin, Texas, and The Brandi Law Firm, of San Francisco, California. The undersigned Class Counsel have litigated numerous class actions and other complex cases, including against Defendant Uber, and intend to prosecute this action vigorously for the benefit of the entire Class. Plaintiff and Class Counsel can and will fairly and adequately protect the interests of all members of the Class.

43.     **Fed. R. Civ. P. 23(b)(2) Factors**. Defendants acted on grounds generally applicable to the entire Class, by terminating their employment in the same manner, thereby

making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole.  The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendants.

44.     Injunctive relief is necessary to prevent Defendant Uber from continuing to deprive its employee Drivers of their statutory rights. Money damages alone will not afford adequate and complete relief, and injunctive relief is necessary to restrain Defendants from continuing to systematically and uniformly and incorrectly disclaim any employer obligations with respect to its Drivers.

45.     **Fed. R. Civ. P. 23(b)(3) Factors**. Common issues of fact and law predominate in this matter and the class action method is superior to other methods available for handling this litigation.  Indeed, the WARN has been described in judicial opinions as "contemplat[ing] enforcement by class action."

46.     **Common issues predominate**. As set forth above, common issues of fact and law predominate over individualized issues because Defendants have violated the WARN Act by withdrawing from Austin, effectively shutting down its operations and layoff off all its employees in the same manner at the same time. Virtually all issues of liability will be common to the class. Furthermore, to the extent Class Members' damages are individualized, the analysis of each Class Member's measure of damages is similar or identical and is capable of being resolved by application of a common damages formula and/or by the use of a common set of data within the possession of Defendant Uber.

47.     **Superiority**. Additionally, a class action is superior to other available methods for fair and efficient adjudication of the controversy, and in fact, is a statutory right granted in the

**Class Action Complaint**

WARN Act.  The damages sought by each Class Member are such that individual prosecution would prove burdensome and unduly expensive.  It would be extremely inconvenient and hardly cost-effective for the members of the Class to effectively redress the wrongs done to them on an individual basis.  Even if the members of the Class themselves could afford such individual litigation, such individualized litigation would present an unnecessary burden on the courts.

48.    **Manageability**. The trial and litigation of Plaintiff's claims are manageable. Class members and damages data may be identified through Defendants' own records. Individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' systematic and uniform conduct.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

49.    Further, Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief with respect to the Class as a whole appropriate.

50.    **Notice to the Class**. Notice to the Class may be made by direct mail, email, and/or publication. Defendant Uber will have data regarding contact information for each Class Member.

## VI.    CAUSES OF ACTION

### A. <u>First Cause of Action: WARN Act Violation</u>

51.    Plaintiff repeats and realleges the allegations set forth above, and incorporate the same as if set forth herein at length.

52.    Defendant Uber is an "employer" as defined in the WARN Act.

53.    Plaintiff and Class Members are "affected employees" and/or "aggrieved employees" who suffered an "employment loss" as defined in the WARN Act.

**Class Action Complaint**

54.     Plaintiff and Class Members' employment loss was the result of Defendant Uber's "shuttering operations" in Austin, which act constituted a "plant closing" and/or "mass layoff" as those terms are defined in the WARN Act.

55.     Defendant Uber failed to provide timely or proper (or any) sufficient WARN Act notice to Plaintiff and Class Members.

56.     Defendant Uber is thus liable for up to sixty (60) days back pay, including other benefits, to each "affected employee" or "aggrieved employee."

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and on behalf of the above-defined Class Members request judgment and relief on all causes of action as follows:

- An Order certifying this instant matter as a Class Action;
- Judgment in favor of Plaintiffs and the Class, and against Defendant Uber on Count I;
- Injunctive and/or declaratory relief to the extent available;
- All available statutory damages and penalties pursuant to the WARN Act;
- Pre- and post-judgment interest to the extent available at law;
- All costs and attorney's fees pursuant to 29 U.S.C. § 2104(a)(6) or other applicable law.

**JURY TRIAL DEMANDED**

Dated: June 9, 2016

Respectfully Submitted,

<table>
<tr><td></td><td>/s/ Thomas J. Brandi</td></tr>
<tr><td>Michael L. Slack (Texas Bar No. 18476800)</td><td>Thomas J. Brandi (Cal. Bar No. 53208)</td></tr>
<tr><td>mslack@slackdavis.com</td><td>tjb@brandilaw.com</td></tr>
<tr><td><em>Pro Hac Vice Anticipated</em></td><td>Brian J. Malloy (Cal. Bar No. 234882)</td></tr>
<tr><td>John R. Davis (Cal. Bar No. 308412)</td><td>bjm@brandilaw.com</td></tr>
<tr><td>jdavis@slackdavis.com</td><td>THE BRANDI LAW FIRM</td></tr>
<tr><td><em>Pro Hac Vice Anticipated</em></td><td>354 Pine Street, Third Floor</td></tr>
<tr><td>SLACK & DAVIS, LLP</td><td>San Francisco, CA 94104</td></tr>
</table>

**Class Action Complaint**

2705 Bee Cave Road, Suite 220                    415-989-1800
Austin, TX 78746
512-795-8686
512-795-8787 (fax)

**Class Action Complaint**