UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD JOHNSTON,<br>　　　　Plaintiff,<br>　　v.<br>UBER TECHNOLOGIES, INC.,<br>　　　　Defendant. | Case No. 16-cv-03134-EMC<br><br>**ORDER STAYING PROCEEDINGS**<br><br>Docket No. 66 |

Plaintiff Todd Johnston filed this putative class action asserting a single claim for relief under the Worker Adjustment and Retraining ("WARN") Act. Johnston claims that Uber violated the Act when it ceased operations in Austin, Texas, without providing notice as required under the statute. The Court previously stayed this action, along with all of the other Uber actions, pending the Ninth Circuit's resolution of various issues on appeal. However, on March 22, 2017, the Court lifted the stay in this case "for the limited purpose of entertaining Uber's motion to compel arbitration," since the motion would present a statutory issue unaffected by the pending appeals. Docket No. 61. Specifically, Johnston argues that the WARN Act creates a substantive right to litigate on a class basis, and thus constitutes a "contrary congressional command" overriding the FAA and rendering the class waivers in Uber's arbitration clauses unenforceable. Docket No. 68 ("Opp."). Johnston further argues that because the class waiver is non-severable, the entire arbitration agreement is void.

Johnston recognizes that in other contexts, as Uber argues, courts have rejected the argument that statutory provision or contemplation of a class action remedy creates a substantive, nonwaivable right to litigate on a class basis that overrides the FAA. *See, e.g.*, *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (rejecting claim that "congressional approval of

1  Rule 23 establish[es] an entitlement to class proceedings for the vindication of statutory rights");

2  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) ("[T]he fact that the [ADEA]

3  provides for the possibility of bringing a collective action does not mean that individual attempts

4  at conciliation were intended to be barred."); *Walthour v. Chipio Windshield Repair, LLC*, 745

5  F.3d 1326, 1336 (11th Cir. 2014) (holding that collective action provision of the FLSA does not

6  constitute a "'contrary congressional command' that precludes the enforcement of plaintiffs'

7  Arbitration Agreements and their collective action waivers"); *Johnson v. W. Suburban Bank*, 225

8  F.3d 366, 377 (3d Cir. 2000) (holding that *Gilmer* forecloses argument that the TILA creates a

9  nonwaivable right to bring a class action).

10  But, Johnston argues, the WARN Act differs in important respects from the laws

11  considered in those cases. First, unlike the Sherman Act, which the Supreme Court considered in

12  *Italian Colors*, the WARN Act was passed *after* the enactment of the FAA and the Federal Rules

13  of Civil Procedure making it more likely that Congress intended the WARN ACT to have primacy

14  over the FAA and that it class action provisions under the Federal Rules were purposefully

15  enshrined in the Act. Second, unlike any of the previously considered statutes, the WARN Act is,

16  in substance, specifically concerned with mass actions. It applies only to workplaces with 100 or

17  more employees, and its provisions are triggered only in the event of a "plant closing or mass

18  layoff." 29 U.S.C. §§ 2101-2102. Given this context, Johnston maintains, Congress must have

19  intended affected employees to litigate collectively to enforce their rights. Finally, also unlike the

20  above statutes, there is no mechanism for administrative enforcement of the WARN Act; instead,

21  it may be enforced *only* through private litigation. *See* 20 C.F.R. § 639.1 ("Enforcement of

22  WARN will be through the courts, as provided in section 5 of the statute. . . . The Department of

23  Labor has no legal standing in any enforcement action and, therefore, will not be in a position to

24  issue advisory opinions of specific cases."). Given that private litigation is the only avenue by

25  which the statutory rights conferred by the WARN Act may be enforced, Johnston argues,

26  Congress could not have intended to drastically weaken such enforcement by allowing arbitration

27  agreements to preclude collective litigation. Uber, of course, takes issue with Johnston's

28  argument, relying in large part on *Italian Colors*, *Gilmer*, and their progeny. The analysis of the

merits of the parties' contentions, while not entirely on a clean slate, is debatable, and no appellate court has addressed the precise issue raised by Johnston.

However, before addressing the merits of Johnston's statutory claim, the Court must resolve the threshold question of whether it is for this Court or an arbitrator to determine the enforceability of the class waiver. That question, in turn, depends on which of two arbitration provisions applies here. Johnston agreed to arbitration agreements in 2014, *see* Docket No. 66-1 Ex. C ("2014 Agreement"), and 2015, *see* Docket No. 66-1 Ex. F ("2015 Agreement"). The 2014 and 2015 Agreements differ in one important respect: the 2014 Agreement provides that the disputes subject to arbitration "include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. All such matters must be decided by an Arbitrator and not by a court or judge." 2014 Agreement § 15.3i. In *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016), the Ninth Circuit, considering identical language, held that all challenges to the enforceability of the agreement, including the class-waiver provision, must be decided by an arbitrator. Accordingly, Uber argues that if the 2014 agreement is operative, the question whether the WARN Act preempts the class waiver must be decided by an arbitrator. By contrast, the 2015 Agreement explicitly carves out challenges to the class waiver from the delegation clause, leaving such challenges for the Courts. As such, if the 2015 agreement is operative, the Court may resolve the WARN Act question.[1]

Previously, in *O'Connor v. Uber Technologies*, C-13-1386-EMC, this Court issued an order pursuant to Federal Rule of civil procedure 23(d) enjoining Uber from enforcing the 2015

---

[1] Uber argues that even if the 2015 Agreement is operative, an additional threshold question must be resolved by an arbitrator. By its terms, the WARN Act applies only to "employees." 29 U.S.C. §§ 2101; 2102. But the question of Uber drivers' status as employees or independent contractors is, of course, one of the central disputes in all of these cases. The 2015 Agreement provides that an arbitrator must resolve all "disputes arising out of or related to [Johnston's] relationship with [Uber]," and also that "[t]his agreement is intended to require arbitration of every claim or dispute that lawfully can be arbitrated, except for those claims and disputes . . . expressly excluded." 2015 Agreement § 15.3i. The Agreement nowhere excludes disputes regarding the employment status of drivers. Thus, Uber argues, before the Court can decide whether the WARN Act preempts the class-action waiver, an *arbitrator* must first resolve the employment status of the drivers. Because the Court stays the action pending the current appeals, it need not resolve this question at this time.

3

1    Agreement. *O'Connor* Docket No. 435. The *O'Connor* order applied with respect to all members

2    of the *O'Connor* class, but also to all members of the class in *In re Uber FCRA Litigation*, C-14-

3    5200-EMC. Johnston is a member of the *FCRA* class. While the Court later terminated its 23(d)

4    order, the Court's order terminating the injunction required Uber to re-issue the 2015 Agreement

5    and held that it may only be applied *prospectively* to current drivers. *See O'Connor*, Docket No.

6    748 at 27, 34 ("The Court will not, however, retroactively vacate its Rule 23(d) orders, and thus it

7    will not deem the December 2015 Agreement effective as to drivers who did not timely opt out of

8    the arbitration agreement during the pendency of the Rule 23(d) orders; the Court does not rule on

9    the enforceability of the December 2015 Agreement."). Johnston ceased driving for Uber prior to

10   the Court's order terminating the Rule 23(d) order. Accordingly, Uber cannot have reissued the

11   2015 Agreement to him. Under the terms of the Court's prior orders, therefore, the 2014

12   Agreement would be operative, as Uber would be prohibited from enforcing the 2015 Agreement

13   against Johnston.

14   That is not the end of the story, however, as the validity of the Court's Rule 23(d) order is

15   one of the issues currently on appeal before the Ninth Circuit. *See O'Connor v. Uber*

16   *Technologies., Inc.*, Ninth Cir. Case Nos. 15-17532, 16-15000. Should that Court hold that the

17   Rule 23(d) order was improper, then the 2015 Agreement would become the operative agreement

18   in this case.

19   For that reason, the Court concludes that it cannot rule on Uber's motion to compel

20   arbitration before the Ninth Circuit has issued its ruling with respect to the Rule 23(d) order. The

21   Court will stay this matter until then. As the Supreme Court has explained, "district courts have

22   the inherent authority to manage their dockets and courtrooms with a view toward the efficient and

23   expedient resolution of cases," including the "inherent power to stay proceedings pending

24   resolution of parallel actions in other courts." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016)

25   (citing *Landis v. North American Co.,* 299 U.S. 248, 254 (1936)). A stay in this case comports

26   with the factors courts have traditionally considered in determining whether a stay is appropriate.

27   First, the Court finds that a stay is in the public interest, as it will conserve judicial resources by

28   waiting until the Ninth Circuit has ruled on a potentially dispositive issue (as to whether an

arbitrator or the court will decide the merits of Johnston's interpretation of the WARN Act preservation of class action rights). Second, Johnston will not be irreparably harmed by a stay. His WARN Act claim seeks only retrospective monetary relief for Uber's alleged violation of the Act in 2016; there is no contention that Johnston faces any ongoing harm that could be remedied through this action. Finally, any stay is likely to be of limited duration. Briefing for the Ninth Circuit appeals has already been completed, and oral argument is scheduled for July 21, 2017. The Court should likely be able to lift the stay within a few months.

In sum, for the reasons stated above, the Court **STAYS** this matter pending the Ninth Circuit's consideration of its Rule 23(d) order. The Court will rule on the present motion after the Ninth Circuit's ruling in that matter.

**IT IS SO ORDERED**.

Dated: June 22, 2017

_____
EDWARD M. CHEN
United States District Judge