Michael L. Slack (Texas Bar No. 18476800)
mslack@slackdavis.com
*Pro Hac Vice*
John R. Davis (Cal. Bar No. 308412)
jdavis@slackdavis.com
*Pro Hac Vice*
SLACK DAVIS SANGER, LLP
2705 Bee Cave Road, Suite 220
Austin, TX 78746

Thomas J. Brandi (Cal. Bar No. 53208)
tjb@brandilaw.com
Brian J. Malloy (Cal. Bar No. 234882)
bjm@brandilaw.com
THE BRANDI LAW FIRM
354 Pine Street, Third Floor
San Francisco, CA 94104
415-989-1800

***Attorneys for Plaintiff Todd Johnston***

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| TODD JOHNSTON, individually and on behalf of a class of similarly situated persons, <br><br> Plaintiff, <br><br> vs. <br><br> UBER TECHNOLOGIES, INC., a Delaware Corporation, <br><br> Defendant. | Case No. 3:16-cv-3134-EMC <br><br> [This case relates to Case No. 3:13-cv-3826-EMC] <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT'S RENEWED MOTION TO COMPEL ARBITRATION** <br><br> Date: August 29, 2019 <br> Time: 1:30 p.m. <br> Judge: Hon. Edward M. Chen <br> Courtroom: 5 |

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION                                                                      1

II.   STATEMENT OF ISSUE(S) TO BE DECIDED                                               2

III.  FACTUAL AND PROCEDURAL BACKGROUND                                                 2

IV.   LAW AND ARGUMENT                                                                  3

      A.   <u>Sections 2104 and 2105 of the WARN Act Contain Contrary
           Congressional Commands that Override the FAA</u>                             3

           1.   *The Text, Legislative History, and Underlying Purpose of
                the WARN Act Guarantee Non-Waivable Collective Rights
                and Remedies to Receive WARN Act Notice and to Pursue
                WARN Act Redress on a Collective Basis*                                 3

                a)   <u>The Plain Language of 29 U.S.C. §§2104(a)(5) & 2105
                     Supplies a Contrary Congressional Command Requiring
                     the Availability of Collective WARN Act Litigation</u>            3

                b)   <u>The Legislative History and Underlying Purpose
                     of the WARN ACT</u>                                               7

           2.   *The Supreme Court's "Contrary Congressional Command"
                Jurisprudence Is Distinguishable from the Specifics of this
                Case*                                                                  9

           3.   *Recent Supreme Court Cases Support Finding the WARN Act
                Class Action Waiver Invalid*                                          11

                a)   <u>*Epic Systems* Supports The Unenforceability of the Class
                     Action Waiver Under the WARN Act</u>                             11

                b)   <u>The Supreme Court Has Recently Recognized That The
                     Power of Courts To Enforce Arbitration Agreements Is
                     Not Unlimited</u>                                                12

           4.   *Alternatively, the WARN Act Provides for "Exclusive" Venue
                in the "District Court[s] of the United States" Consisting of
                a Contrary Congressional Command Overriding the FAA*                  13

      B.   <u>The WARN Act's Non-Waivable "Rights and Remedies" Are
           Substantive and Trigger the FAA's Savings Clause with Respect
           To Uber's Class Waiver</u>                                                 16

i

C.      The Court Should Rule On The Validity of the Class Action Waiver First ...... 17

D.      Because the Class Waiver Is Unenforceable, This Case Must Remain In Civil Court Under The Express Terms of the 2015 Agreement ...... 19

E.      The District Court Opinions in the Three Cases Cited by Uber Offer No Persuasive Authority ...... 20

V.    CONCLUSION ...... 21

CERTIFICATE OF SERVICE ...... 23

# TABLE OF AUTHORITIES

## CASES

Am. Exp. Co. v. Italian Colors Restaurant
     570 U.S. 228 (2013)                                      3, 9, 10, 11

AT&T Mobility LLC v. Concepcion
     563 U.S. 333 (2011)                                          19

Cashman v. Dolce Int'l/Hartford, Inc.
     225 F.R.D. 73 (D. Conn. 2004)                                 9

Central Mont. Elec. Power Co-Op, Inc. v. Admin. of Bonneville Power Admin.
     840 F.2d 1472 (9th Cir. 1988)                                 6

Chambers v. Groome Transp. of Ala.
     41 F.Supp. 3d 1327 (M.D. Ala. 2014)                           20, 21

CompuCredit Corp. v. Greenwood
     565 U.S. 95 (2012)                                        *passim*

Day v. Celadon Trucking Servs., Inc.
     827 F.3d 817 (8th Cir. 2016)                                    7

EEOC v. Waffle House, Inc.
     534 U.S. 279 (2002)                                     14, 15

Epic Systems Corp. v. Lewis
     584 U.S. ____, 138 S.Ct. 1612, 1624, 200 L.Ed. 889 (2018)    3, 6, 11, 12

Finnan v. L.F. Rothschild & Co.
     726 F.Supp. 460 (S.D.N.Y. 1989)                               8

Gilmer v. Interstate/Johnson Lane Corp.
     500 U.S. 20 (1991)                                        12, 16

Green v. Zachary Indus., Inc.
     36 F.Supp. 3d 669 (W.D. Va. 2014)                           20, 21

Iskanian v. CLS Transp. L.A., LLC
     59 Cal. 4th 348 (2014)                                     8, 15

Johnson v. W. Suburban Bank
     225 F.3d 366 (3d Cir. 2000)                                   5

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.
    473 U.S. 614 (1985)      16, 17

New Prime Inc. v. Dominic Oliveira
    586 U.S. ____, 139 S.Ct. 532, 202, L. Ed. 2d. 536 (2019)      13

Prima Paint Corp. v. Flood & Conklin Mfg. Co.
    388 U.S. 395 (1967)      20

Richemond v. Uber Technologies, Inc.
    263 F.Supp.3d 1312 (S.D. Fla. 2017)      19

Sakkab v. Luxottica Retail N. Am., Inc.
    803 F.3d 425 (9th Cir. 2015)      8, 15

Shearson/Am. Exp. Inc. v. McMahon
    482 U.S. 220 (1987)      3, 9, 10, 14

Shepherd v. ASI, Ltd.
    295 F.R.D. 289 (S.D. Ind. 2013)      9

Sides v. Macon Cnty. Greyhound Park, Inc.
    2011 WL 2728926 (M.D. Ala. 2011)      20, 21

Util. Air Regulatory Grp. v. EPA
    573 U.S. 302 (2014)      4, 7

**STATUTES AND OTHER AUTHORITIES**

20 C.F.R.
    §639-1(d)      8, 14, 15
    §639-1(g)      5, 6, 7 16
    §639.1(g)      5, 6

54 Fed. Reg.
    16042      *passim*
    16043      14, 15
    16044      *passim*

9 U.S.C.
    §1      13
    §2      13, 16, 17
    §3      13
    §4      13

15 U.S.C.
  §78a                            9
  §78aa                          14
  §1601                          5
  §1640(a)(1)(B)                  5
  §1679                      5, 10
  §1679c(a)                     10
  §1679f(a)                  10, 11
  §1679(h)                    14

18 U.S.C.
  §1961                          9

29 U.S.C.
  §157                          11
  §2101                         1
  §2101(a)(1)                   12
  §2101(a)(2)                   12
  §2101(a)(3)                   12
  §2102                       16
  §2102(a)(1)                   4
  §2104(a)(5)                *passim*
  §2104(b)                  *passim*
  §2105                   *passim*
  §2107                       4

42 U.S.C.
  §12101                       14

Federal Rules of Civil Procedure
  23                        5, 10, 12

Federal Rules of Evidence
  201(b)                       6

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S RENEWED MOTION TO COMPEL ARBITRATION

COMES NOW Plaintiff Todd Johnston ("Plaintiff"), who submits this Memorandum in Opposition to Defendant Uber Technologies, Inc.'s ("Uber") Renewed Motion to Compel Arbitration. (Dkt. No. 66.) For the reasons set forth below, Defendant's Motion should be denied and the case should move forward into discovery.

### I.      INTRODUCTION

Uber concedes that the issue of the enforceability of the class action waiver is for the Court to decide pursuant to the 2015 Agreement. (Dkt. No. 110, at 15.) If the class waiver is found unenforceable by the Court, the Agreement by its terms provides that the class action must be litigated in civil court. (Dkt. No. 110-1, at 55 of 87, 15.3.v.)

In its First Motion to Compel, Uber devoted less than three (3) pages to Plaintiff's WARN Act argument, while Plaintiff's Opposition discussed in detail the statutory scheme, legislative history, and case law leading to the inexorable conclusion that the WARN Act contains a contrary congressional command that overrides the Federal Arbitration Act ("FAA"). (*Compare* Dkt. No. 66, at 18-21 *with* Dkt. No. 68, at 4-14.) This time, Uber only spends four (4) pages on the topic.

For the reasons set forth below, the WARN Act contains a "contrary congressional command" that overrides the FAA and/or provides covered workers a non-waivable substantive right to collectively pursue and to have pursued on their behalf WARN Act claims. 29 U.S.C. §§ 2104(a)(5) & 2105. This contrary congressional command is apparent in the plain language, legislative history, underlying purpose of the statute, and Department of Labor ("DOL") regulations and rules. Indeed, the WARN Act is unique in that there is no agency that enforces its mandates or vindicates the public interest precisely because Congress intended for redress exclusively through class actions.

Moreover and separately, the WARN Act provides a non-waivable substantive right to litigate WARN Act claims collectively, and the Court should invoke the savings clause of the FAA to strike Uber's class waiver on illegality grounds. Congress's objective with the WARN Act was

to legislatively guarantee certain non-waivable rights and remedies in a manner that could not be reduced by contract.

Accordingly, the Court should strike the class waiver and deny Uber's Renewed Motion to Compel Arbitration.

## II.   STATEMENT OF ISSUE(S) TO BE DECIDED

1.   Whether Uber's class action waiver barring a collective action under the WARN Act, 29 U.S.C. § 2101, *et seq.*, is enforceable; and,

2.   If Uber's class action waiver is found unenforceable, whether under the terms of the 2015 Agreement the case must proceed in this Court.

## III.   FACTUAL AND PROCEDURAL BACKGROUND

In or around December 2015, the Austin, Texas City Council passed an ordinance requiring transportation companies, such as Uber, to conduct fingerprint-based background checks on their drivers. (Compl. ¶ 10 (Dkt. No. 1).) In response, Uber created a political action committee and raised millions of dollars to gain signatures for a referendum on the ordinance. (Compl. ¶¶ 11-12.) The referendum occurred on Saturday May 7, 2016 and Austin's voters overwhelmingly approved of the ordinance, rejecting Uber's lobbying efforts to undo the Austin City Council's actions. (Compl. ¶ 12.) Two days later, on Monday May 9, 2016, Uber indefinitely terminated its Austin operations, and made the following written statement: "Disappointment does not begin to describe how we feel about **shuttering operations in Austin**." (Compl. ¶ 13.)

Plaintiff filed this single-count WARN Act proposed class action Complaint on June 9, 2016. The Complaint alleges that: Uber is an employer for WARN Act purposes; Uber's Austin Drivers are employees for WARN Act purposes under applicable law; Uber's "shuttering operations in Austin" constituted a plant closing and/or mass layoff for which WARN Act notice was required; and Uber did not provide WARN Act notice in violation of the WARN Act.

From November 21, 2016 until recently, this case was largely stayed due to pending appeals before the Ninth Circuit and U.S. Supreme Court. (Dkt. No. 47.) However, because there was no appeal directly pertaining to the WARN Act's effect on Uber's class waiver and/or Arbitration Agreement

generally, the Court partially lifted the stay in this case so that the parties could brief the interplay between the WARN Act and the FAA. After such briefing and oral arguments (Dkt. Nos. 66, 68, 70, 78), the Court determined it could not rule until the pending appeals were decided, and administratively denied Uber's First Motion to Compel Arbitration. (Dkt. Nos. 77 & 89.)

The cases before the Ninth Circuit and U.S. Supreme Court having been largely resolved, the parties and Court agreed to tee up Uber's Renewed Motion to Compel Arbitration.

## IV.    LAW AND ARGUMENT

### A.   Sections 2104 and 2105 of the WARN Act Contain Contrary Congressional Commands that Override the FAA

#### 1.    *The Text, Legislative History, and Underlying Purpose of the WARN Act Guarantee Non-Waivable Collective Rights and Remedies to Receive WARN Act Notice and to Pursue WARN Act Redress on a Collective Basis*

As stated by the Supreme Court, the "[FAA's] mandate may be overridden by a contrary congressional command" that is "discernible from the text, history, or purposes of the statute." *Shearson/Am. Exp. Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987); *see also Epic Systems Corp. v. Lewis*, 584 U.S.___, 138 S.Ct. 1612, 1624, 200 L.Ed.2d 889 (2018). The WARN Act – which was enacted more than sixty (60) years after the FAA and which explicitly states that its rights and remedies (which include a right to collective litigation) are non-waivable by contract – scores a direct hit on all three fronts.

#### a)    The Plain Language of 29 U.S.C. §§ 2104(a)(5) & 2105 Supplies a Contrary Congressional Command Requiring the Availability of Collective WARN Act Litigation

29 U.S.C. § 2104(a)(5) ("Section 2104(a)(5)") states the following:

> **A person seeking to enforce such liability, including a representative of employees … may sue either for such person or for other persons similarly situated, or both,** in any district court of the United States for any district in which the violation is alleged to have occurred, or in which the employer transacts business.

(Emphasis added.)

29 U.S.C. § 2105 ("Section 2105") reads as follows: "**The rights and remedies provided to employees by this chapter are <u>in addition to</u>, and not in lieu of, any other contractual or statutory rights and remedies[.]**" 29 U.S.C. § 2105 (emphasis added).

The plain language of the Section 2104(a)(5) is clear, and legislatively provides for representative or class-based resolution of WARN disputes, which is in accord with the remainder of the statutory scheme, including specifically with regard to the other substantive right guaranteed by the statute: the right to receive notice. The notice provision of the WARN Act only requires that the WARN notice be provided to a representative of employees if such employees are represented. 29 U.S.C. § 2102(a)(1) (stating that notice shall be provided "to each representative of the affected employees as of the time of notice, or if there is no such representative at that time, to each affected employee"). Congress contemplated representative notice to be sufficient because of the non-waivable class action redress provisions in Sections 2104(a)(5) and 2105. *See also Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 321 (2014) (stating that "reasonable statutory interpretation must account for both the specific context in which language is used and the broader context of the statute as a whole" (internal citations and quotation marks omitted)). Section 2104(a)(5) alone constitutes a sufficiently robust contrary congressional command to override FAA's interest (if there is any at all) in individual proceedings.[1]

The plain language of Section 2105 is equally clear and amplifies the command set forth in Section 2104(a)(5). Section 2105 explicitly provides that all of the "rights and remedies" under the WARN Act are "in addition to" other contractual arrangements between the parties. This means that WARN Act rights and remedies (including the right to collective WARN Act litigation) cannot be waived in contract.

Additional guidance is provided by the agency charged with the WARN Act's implementation, the DOL.  *See* 29 U.S.C. § 2107 (granting the DOL the authority to "prescribe such regulations as may be necessary to carry out [the WARN Act]"). DOL has rightly interpreted

---

[1] To be clear, the portion of Uber's Arbitration Agreement that most offends Sections 2104(a)(5) and 2105 of the WARN Act is the class waiver; it is not the portions providing for an arbitral forum. Plaintiff does argue in the alternative, *infra* at III.A.4, that the WARN Act provides an "exclusive" venue in the federal courts for resolution of WARN Act claims.

Plaintiff's Opposition to Defendant's Renewed Motion To Compel Arbitration - Case No. 3:16-cv-3134-EMC

Section 2105 as legislatively forbidding contractual waiver of any WARN Act rights or remedies, including those found in Section 2104(a)(5): "After considering the comments received, the Department concludes that the WARN requirements stand by themselves and cannot be set aside in favor of collective bargaining agreements[.]" Worker Adjustment and Retraining Notification Final Rule (hereinafter "DOL Final Rule"), 54 Fed. Reg. 16042, 16044, 1989 WL 278605 (Apr. 20, 1989) (discussion of 20 C.F.R. § 639.1(g)); *see also* 20 C.F.R. § 639-1(g) ("Collective bargaining agreements … may not reduce WARN rights.").

The statutory text of Sections 2104(a)(5) and 2105 of the WARN Act differs substantially from other federal statutory schemes that litigants have argued created a federal right to class actions overriding the FAA. For example, it has been argued that the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, created a non-waivable right to pursue class relief based on the statute's reference to possible TILA class actions. *See, e.g.*, 15 U.S.C. § 1640(a)(1)(B) ("[I]n the case of a class action …."). However, as recognized by the Third Circuit, there is a difference between a statute that merely contemplates class treatment under Rule 23 (*e.g.*, TILA or the CROA) versus a statute, such as the WARN Act, that actually mandates the availability of a class action and contains explicit non-waiver language. *Johnson v. W. Suburban Bank*, 225 F.3d 366, 371 (3d Cir. 2000) ("Though the statute clearly contemplates class actions, there are no provisions within the law that create a right to bring them[.]"). The same analysis applies to the several similarly-worded and equally vague references to class actions in the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 *et seq.*, *see infra* at n.4.

Congress doubtless was aware of Federal Rule of Civil Procedure 23 in its 1988 drafting the WARN Act, so any reading of Section 2104(a)(5) as simply a regurgitation of the obvious ignores the "exclusive remedies" provision of Section 2104(b), the non-waiver provision of Section 2105 relating to both "rights and remedies," and otherwise does injustice to the statute in a number of ways.

First, to read Section 2104(a)(5) as nothing more than a reminder that Rule 23 exists is to ignore the class action-focused aim of the WARN Act and its subject matter, which is discussed in further detail below. As discussed below, the WARN Act was originally proposed as an

amendment to the NLRA "to make plant closing decisions and permanent layoffs a **mandatory subject of [collective] bargaining**." (*See* **Ex. 1** (Legislative History, at 590 (Aug. 17, 1987 House Committee Rep. on H.R. 1122 (emphasis added)).)[2] But Congress eventually decided to go a different route as explained by the DOL in its Final Rule. The WARN Act as enacted was meant to legislatively supplant an area that was traditionally governed by employment contract. DOL Final Rule, 54 Fed. Reg. 16042, 16044 (in discussion of 20 C.F.R. § 639.1(g), stating that "[t]he Department also recognizes that certain of the provisions of WARN involves subjects which are typically covered in collective bargaining agreements"). The Court should read the class action language in Section 2104(a)(5) with a healthy regard to the WARN Act's context and lack of other means of enforcement (*see infra*), which supports a substantive interpretation of the class action language found therein. This significant fact, discussed more below, is a critical distinction between the WARN Act and the National Labor Relations Act ("NLRA") addressed in *Epic Systems*.

Second, and besides, such a meaningless reading of Section 2104(a)(5) defies traditional principles of statutory interpretation. *Central Mont. Elec. Power Co-op, Inc. v. Admin. of Bonneville Power Admin.*, 840 F.2d 1472, 1478 (9th Cir. 1988) ("We avoid any statutory interpretation that renders any section superfluous and does not give effect to all of the words used by Congress." (citation omitted)). A reading of Section 2104(a)(5) as only demonstrating the possibility of WARN Act class actions is tantamount to deletion of the class-related language of Section 2104(a)(5) altogether.

Third, negating the class action mechanism and enforcing Uber's *individual* Arbitration Agreement opens a large backdoor that was not intended by Congress, and through which Uber presently wishes to walk. As stated above, the aim of the WARN Act was to legislate minimum "rights and remedies" in a manner that could not be reduced or waived by contract, *see* 29 U.S.C. § 2105 & 20 C.F.R. § 639-1(g), and in an area of the employer-employee relationship that was once subject to contractual arrangement alone. *See* DOL Final Rule, 54 Fed. Reg. 16042, 16044.

---

[2]  Pursuant to Federal Rule of Evidence 201(b), Plaintiff requests that the Court take judicial notice of Exhibits 1, 2 and 3 attached hereto.  For this and future citations to Exhibit 1, please refer to the original pagination of the compiled legislative history.

Plaintiff's Opposition to Defendant's Renewed Motion To Compel Arbitration - Case No. 3:16-cv-3134-EMC

If a contract could gut the WARN Act's minimum rights and remedies, as does Uber's Arbitration Agreement, the explicit non-waiver language of Section 2105 is both ignored and the entire purpose of the WARN Act is negated. As discussed elsewhere in this brief, there is no other means of enforcement of the WARN Act other than by private civil litigation.

The Court should find that the plain language of Section 2104(a)(5) and Section 2105, providing for a non-waivable right/remedy to pursue class relief for WARN violations, consists of a contrary congressional command that overrides the FAA's negligible interest in enforcing the *individual* aspect of Uber's Arbitration Agreement.

**b)** **The Legislative History and Underlying Purpose of the WARN Act**

The case law and the legislative history emphasize that the WARN Act is a "remedial statute[,]" *Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 835 (8th Cir. 2016), and that "Congress intended this protective legislation to be liberally construed[.]" (*See* **Ex. 1** (Legislative History, at 71 (Nov. 10, 1988 Ltr. from WARN Act Principal Authors to U.S. DOL)).) In evaluating Sections 2104(a)(5) and 2105 of the WARN Act, the Supreme Court has instructed that "reasonable statutory interpretation must account for both the specific context in which language is used and the broader context of the statute as a whole." *Util. Air Regulatory Grp.*, 573 U.S. at 321.

And indeed, context is revealing when it comes to the WARN Act. The chief objective of the WARN Act was to carve out a piece of the employer/employee contractual relationship (*i.e.*, the handling of mass layoffs and/or plant closings) and to legislate certain class rights and remedies that could not be waived by contract. This much was recognized when DOL issued its Final Rule. *See* DOL Final Rule, 54 Fed. Reg. 16042, 16044.

As argued above, it would defy Congress's entire objective with the WARN Act to return to private contract what Congress explicitly deemed should be untouchable by contract. 29 U.S.C. § 2105 ("The rights and remedies provided to employees by this chapter are **in addition to**, and not in lieu of, any other contractual or statutory rights and remedies[.]"); *see also* 20 C.F.R. § 639-1(g) ("Collective bargaining agreements … may not reduce WARN rights.").

Senator Ted Kennedy, one of the sponsors of an early version of the WARN Act, wrote that the bill's provisions were "too important as a matter of public policy to be left to the vagaries of private contract." (*See* **Ex. 1** (Legislative History, at 731 (June 2, 1987 Senate Committee Report on S. 538 prepared by Sen. Kennedy)).)

In addition, the WARN Act leans heavily on representatives of aggrieved employees for both the provision of notice and for the pursuit of WARN violation redress. The WARN Act's provision for a non-waivable right to collectively litigate WARN Act claims provided for in the plain language of Section 2104(a)(5) and Section 2105 is critically important to the WARN scheme due to the fact that the WARN Act (unlike all or nearly all other federal employment statutes) is not enforceable by any federal agency.

As found by DOL, the WARN Act is "unique" in that it is enforceable only through private civil litigation. *See* DOL Final Rule, 54 Fed. Reg. 16042 (stating that "[t]he Department believes that in the unique WARN enforcement scheme, … all enforcement will occur in the context of private civil lawsuits …."); *see also* 20 C.F.R. § 639-1(d) ("Enforcement of WARN will be through the courts, as provided in section 5 of the statute."). This is consistent with the view of the WARN Act's principal sponsors. As stated by Senator Kennedy, the bill was drafted in "recognition of the fact that private plaintiffs will be functioning as private attorney-generals in enforc[ement]" of the WARN Act. (*See* **Ex. 1** (Legislative History, at 742 (June 2, 1987 Senate Committee Report on S. 538 prepared by Sen. Kennedy)).)

Given that there is no administrative enforcement mechanism and the only enforcement is through private civil litigation, the WARN Act is properly viewed as a private attorney general type of action.  Courts, particularly in California, have found private attorney general actions are not subject to class action waivers or arbitration provisions.  *See, e.g.*, *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 440 (9th Cir. 2015) (class action waiver and arbitration clause unenforceable for claim brought under California's Private Attorney General Act); *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348 (2014) (same).

Finally, courts have routinely noted Congress's intent that WARN Act violations be pursued collectively. *See Finnan v. L.F. Rothschild & Co.*, 726 F. Supp. 460, 465 (S.D.N.Y. 1989)

(stating that "[b]y its terms, WARN is applicable only in the context of employer action which affects a large number of employees"); *see also Cashman v. Dolce Int'l/Hartford, Inc.*, 225 F.R.D. 73, 90 (D. Conn. 2004) (WARN cases are "particularly amenable to class-based litigation"); *Shepherd v. ASI, Ltd.*, 295 F.R.D. 289, 294 (S.D. Ind. 2013) (observing that WARN Act claims "almost always involve large numbers of similarly situated plaintiffs whose claims may well be small when taken separately but significant in the aggregate.").

If the Court allowed contractual waiver of class or collective pursuit of alleged WARN Act violations, contrary to Congress's directives in Sections 2104(a)(5) and 2105, the WARN Act's objective of shielding its "rights and remedies" from contractual waiver is undermined and the WARN Act itself becomes utterly devoid of enforcement authority.

### 2. *The Supreme Court's "Contrary Congressional Command" Jurisprudence Is Distinguishable from the Specifics of this Case*

As stated above, in balancing another federal statute with the FAA, the U.S. Supreme Court's jurisprudence requires that there be a "contrary congressional command" instructing that the FAA's pro-arbitration policies are to stand down in the context of the particular federal statute under consideration. *See Am. Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013); *CompuCredit Corp. v. Greenwood*, 565 U.S. 95 (2012); *McMahon*, 482 U.S. at 226 (1987).

In *McMahon*, the Court first grappled with the interplay between the FAA and another federal statute, and introduced the standard that the "[FAA's] mandate may be overridden by a contrary congressional command" that is "discernible from the text, history, or purposes of the statute." 482 U.S. at 226-27. The specific statutes at issue in *McMahon* were the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78a *et seq.* The sole challenge to the arbitration agreement was one relating to the forum: "that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue" based simply upon the inclusion of federal venue provisions in the statutes. *McMahon*, 482 U.S. at 227. The Court found nothing in the text, history, or underlying purposes of either statute that conflicted with resolving those claims in the arbitral forum.

Similarly, in *CompuCredit*, the Court considered whether the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 *et seq.*, contained a "contrary congressional command" that precluded the use of an arbitral forum. Again, like *McMahon*, the challenge to the arbitration agreement related solely to the forum. The plaintiffs/respondents argued that the disclosure provision of the CROA – which states that individuals were entitled to receive a statement stating that they "have a right to sue," § 1679c(a) – combined with a non-waiver provision, § 1679f(a), established a contrary congressional command requiring a judicial forum that precluded arbitration, thus overriding the FAA. The Supreme Court disagreed, finding that the CROA did not establish a right to sue in a judicial forum; rather, it only established a right to receive the statement that contained the word "sue." *CompuCredit*, 565 U.S. at 99. Similarly, the Court found that vague statutory references to "actions" and "class actions"[3] and "courts" were sufficient to "call to mind a judicial proceeding" but not sufficient to demonstrate Congress's intent to preclude resolution of CROA claims in an arbitration forum. The Court disposed of the CROA's non-waiver provision by reasoning that a statutory non-waiver of rights cannot extend to cover that which the Court had already found was not a right. *Id.* at 101.

In *Italian Colors*, the Court for the first time considered an arbitration clause with a class waiver in the context of a federal statutory lawsuit. 570 U.S. 228. The plaintiffs/respondents filed a proposed class action under federal antitrust laws, and the defendant/petitioner sought to compel individual arbitration. *Id.* at 231. The Court rejected the "contrary congressional command" argument by remarking that nothing in the statutory text of the Sherman or Clayton Acts evidenced an intention preclude waiver of class-action procedures. *Id.* at 233-234. The focus of the *Italian Colors* decision was on the judge-made "no effective vindication" doctrine.

Importantly, these cases are of limited value to the instant dispute. Dissimilar to *McMahon* and *CompuCredit*, the WARN Act's chief grievance with Uber's Arbitration Agreement is not with the arbitral forum, but rather with the inability to pursue *collective* WARN Act litigation. The

---

[3] The class action language in the CROA is vastly different from Section 2104(a)(5) of the WARN Act. The CROA contains several subsections beginning with, "In the event of a class action …." As with the Truth in Lending Act ("TILA"), discussed *supra* at IV.A.1.a), such vague references only demonstrate Congress's awareness of Rule 23.

collective litigation right of Section 2104(a)(5) is both an explicitly non-waivable statutory directive, as argued above, as well as a non-waivable substantive right guaranteed by the WARN Act, as detailed below. With respect to *CompuCredit*'s non-waiver, because the CROA did not establish a right to a class action or to judicial venue, the non-waiver provision, 15 U.S.C. § 1679f(a), could not be interpreted to reach non-rights. By contrast, the non-waiver provision of Section 2105 of the WARN Act provides that both "rights and remedies" are non-waivable, and Section 2104(a)(5) decisively provides for a right to litigate WARN Act claims on a class basis. And in contrast to *Italian Colors*, wherein the antitrust laws at issue contained zero references to class relief whatsoever, the WARN Act's text, legislative history, and purpose all provide clear evidence that Congress intended to provide non-waivable collective rights and remedies, including the right to pursue violations of the WARN Act in a class or collective proceeding.

> ### 3. *Recent Supreme Court Cases Support Finding the WARN Act Class Action Waiver Invalid*
>
> #### a) *Epic Systems* Supports The Unenforceability of the Class Action Waiver Under the WARN Act

Uber relies heavily on *Epic Systems*. *Epic Systems* held that Section 7 of the NLRA guaranteeing workers the right to engage in "concerted activities for the purpose of collective bargaining or other mutual aid or protection," 29 U.S.C. §157, did not reflect a clearly expressed and manifest congressional intention to displace the FAA and invalidate a class action waiver in an action brought under the Fair Labor Standards Act ("FLSA"). The Supreme Court's rationale in reaching that conclusion supports finding the class action waiver invalid under the WARN Act.

First, the focus of the NRLA and the WARN Act are different. *Epic Systems* recognized that Section 7 of the NLRA focuses on the right to organize unions and bargain collectively. *Epic Systems*, 138 S.Ct. at 1624, 1625. Here, the focus of the WARN Act is explicitly a claim deriving from an employer's mass action of either mass layoffs or a plant closings affecting a substantial number of employees. 29 U.S.C. §2104(a)(5). While a claim under the FLSA, for example, may involve an individual wage and hour violation as opposed to a class-wide violation, in order to have a WARN Act claim, a precondition is that the employer engaged in a large mass action involving multiple employees.

The WARN Act's definitions highlight this focus on mass actions. To be an "employer" under the WARN Act, one of the requirements is that the business enterprise employ at least 100 employees. 29 USC § 2101(a)(1). A "plant closing" requires at least 50 employees to suffer an employment loss at a single site of employment, 29 USC § 2101(a)(2), and a "mass layoff" requires at least 500 employees suffer an employment loss at a single site of employment, 29 USC § 2101(a)(3).

Second, it was significant to the Supreme Court that the NLRA "does not mention class or collective action procedures." *Epic Systems*, 138 S.Ct. at 1624. In contrast, the WARN Act explicitly allows for class actions and in fact class actions are the only mechanism available to enforce the WARN Act. 29 U.S.C. §2104(a)(5) (a person seeking redress under WARN Act "may sue either for such person or for other persons similarly situated").

Third, it was notable that the NRLA became effective in 1935, well-before Rule 23 in 1966. *Epic Systems*, 138 S.Ct. at 1624-25. In contrast, the WARN Act became effective in 1988, after Rule 23 was in effect.

Fourth, the Supreme Court was concerned that the plaintiffs – who brought their claims under the FLSA – were attempting to invalidate the class action waiver under an entirely different statute in the NRLA. *Epic Systems*, 138 S.Ct. at 1626. This was troubling to the Supreme Court because it had previously held that the collective action mechanism applicable to FLSA claims did not displace the FAA or prohibit individualized arbitration proceedings. *Id.* (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991).) Here, Plaintiff is solely relying on the text, legislative history and purpose of the WARN Act to invalidate the class action waiver, the same statute under which Plaintiff is bringing his substantive claim.

Finally, *Epic Systems* did not address the non-waivable argument that Plaintiff raises here regarding the WARN Act's Section 2105, discussed below.

> **b)**     **The Supreme Court Has Recently Recognized That The Power of Courts To Enforce Arbitration Agreements Is Not Unlimited**

Another recent Supreme Court case involving arbitration warrants discussion. While the court's power to send cases to arbitration is broad, the Supreme Court recently reiterated that it is

not unlimited.  *See New Prime Inc. v. Dominic Oliveira*, 586 U.S.___, 139 S.Ct. 532, 202 L. Ed. 2d. 536 (2019).  In *New Prime*, the Supreme Court unanimously ruled that the FAA's exclusion for certain contracts of employment for transportation from its arbitration requirements, 9 U.S.C. §1, was for the courts to decide, and that the exclusion removes both employer-employee and independent contractor contracts from the FAA's arbitration provisions, 9 U.S.C. §§2-4.  *New Prime* thus affirmed the denial of a motion to compel arbitration.  In so doing, *New Prime* recognized that "[w]hile a court's authority under the Arbitration Act to compel arbitration may be considerable, it isn't unconditional."  *Id.* at 537.

*New Prime* highlights that an arbitration clause or a class action waiver should not blindly be enforced.  Rather, the court should closely examine whether the particular claim at issue is subject to arbitration and/or whether a class action waiver is enforceable.  In *New Prime*, the Supreme Court held it was not.

**4.      *Alternatively, the WARN Act Provides for "Exclusive" Venue in the "District Court[s]of the United States" Consisting of a Contrary Congressional Command Overriding the FAA***

Alternatively, to the extent that the Court does not find that the WARN Act dictates a "contrary congressional command" providing a non-waivable right to pursue WARN Act violations on a class or collective basis, as argued *supra*, the Court should find that the WARN Act's "exclusive remedies" provision limits WARN enforcement to the federal courts, consisting of yet another contrary congressional command overriding the FAA.

Section 2104(a)(5) provides that WARN Act suits may be filed "in any district court of the United States for any district in which the violation is alleged to have occurred, or in which the employer transacts business."  Furthermore, Section 2104(b) provides that "[t]he remedies provided for in this section shall be the **exclusive remedies** for any violation of this chapter." (emphasis added).

As discussed above, the WARN Act does not provide for any federal agency enforcement authority. Rather, WARN Act compliance is – as stated by Sen. Ted Kennedy – completely reliant on "private plaintiffs [ ] functioning as private attorney-generals in enforc[ement.]" (**Ex. 1**

(Legislative History, at 742).) For this reason, and just like the right to collectively litigate WARN violations, the DOL determined that federal court venue of WARN Act lawsuits is a critical component of the WARN scheme. *See* DOL Final Rule, 54 Fed. Reg. 16042, 16043 (discussing 20 C.F.R. § 639-1(d) and stating that "[t]he Department believes that in the **unique WARN enforcement scheme**, … **all enforcement will occur in the context of private civil lawsuits** …." (emphasis added)); *see also* 20 C.F.R. § 639-1(d) ("Enforcement of WARN will be through the courts, as provided in section 5 of the statute.").

The exclusive federal court venue provision in the WARN Act is substantially different from what the Supreme Court has encountered. In *CompuCredit*, the statute at issue (the CROA) did not contain an "exclusive remedies" provision like Section 2104(b) of the WARN Act, nor did it contain any explicit venue reference. 565 U.S. at 100 (citing 15 U.S.C. § 1679g). In addition, CROA charges the Federal Trade Commission ("FTC") with enforcement of the CROA. 15 U.S.C. § 1679h. With the WARN Act, private litigants are the exclusive enforcers of the statute and it explicitly and clearly provides for federal court venue as the "exclusive remedy" of the statute, as recognized by DOL.

*McMahon* is likewise distinguishable. In that case, the Exchange Act both provides for criminal enforcement as well as civil regulatory enforcement by the Securities and Exchange Commission ("SEC"). *See* 15 U.S.C. § 78aa. By contrast, the WARN Act's sole enforcement is through private civil litigation. Furthermore, though the Exchange Act contains an "exclusive jurisdiction" statute for the federal courts, it is to the intended exclusion of state court venues. *McMahon*, 482 U.S. at 227-28 (reproducing 15 U.S.C. § 78aa). By contrast, Section 2104(b) states that the remedies found in Section 2104 are the "exclusive remedies" which is more expansive than the language in the Exchange Act.

The Court should draw guidance from the Supreme Court's *EEOC v. Waffle House, Inc.* decision. 534 U.S. 279 (2002). In that case, the Court determined that the EEOC could not be bound to arbitrate its Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, enforcement lawsuit pursuant to the employee's agreement to arbitrate. The lower court had held that, to the extent the EEOC was attempting to vindicate the private interests of the employee, the

arbitration agreement precluded the EEOC from seeking that relief in court. The Supreme Court reversed, finding that when the EEOC files an enforcement action,

> the agency **may be seeking to vindicate public interest, not simply provide make-whole relief for the employee, even when it pursues victim-specific relief**. To hold otherwise would undermine the detailed enforcement scheme created by Congress simply to give greater to an agreement between private parties that does not even contemplate the EEOC's statutory function.

534 U.S. at 296 (emphasis added).

The same logic applies to the WARN Act. Again, as recognized by DOL, the WARN Act is unique among federal employment laws in that its sole enforcement mechanism is through class action and representative action lawsuits pursued in federal courts. *See* DOL Final Rule, 54 Fed. Reg. 16042, 16043; *see also* 20 C.F.R. § 639-1(d). In other words, when a "representative of employees" or a "person seeking to enforce such liability" files a WARN Act class action lawsuit, Congress necessarily contemplated that lawsuit serving both the public and private interests. In fact, Congress contemplated such lawsuits as the **only** means to enforce the WARN Act. The public interest component of private litigation under the WARN Act, secured through the federal court venue provision and the "exclusive remedies" provision of Section 2104(b), and protected from contractual waiver by Section 2105, would be utterly meaningless if WARN Act claims could be compelled to individual arbitration. If individual arbitrations were enforced, the statute would be a fish without fins, which is hardly what the principal WARN Act authors envisioned when they described a "remedial statute intended to provide significant protection to workers and local communities." (*See* **Ex. 1** (Legislative History, at 71).)

And, as discussed above, being similar to a private attorney general action, courts disfavor class action waivers in such instances. *See Sakkab*, 803 F.3d at 440; *Iskanian*, 59 Cal. 4th 348.

Like the Supreme Court in *Waffle House*, this Court should find that the WARN Act's public enforcement interest, which is vindicated solely through private civil class-based litigation in federal courts, outweighs the private interest in individual arbitration under the FAA.

1
2

**B.**     **The WARN Act's Non-Waivable "Rights and Remedies" Are Substantive and
Trigger the FAA's Savings Clause with Respect to Uber's Class Waiver**

3

Ultimately, the Court may find that it need not reconcile the WARN Act and the FAA,

4
because the FAA's savings clause itself requires that Uber's class waiver be found unenforceable.

5
*See* 9 U.S.C. § 2 ("… save upon such grounds as exist at law or in equity for the revocation of any

6
contract."). Drawing from the above discussion and as detailed below, the WARN Act provides

7
for a substantive and non-waivable right to collectively litigate WARN Act violations. 29 U.S.C.

8
§§ 2104(a)(5) & 2105. The class waiver in Uber's Arbitration Agreement infringes upon that

9
substantive right and is therefore "illegal" and unenforceable under both the WARN Act and the

10
FAA.

11
Substantive rights are those that are essential protections of a statute. *See Gilmer v.*

12
*Interstate/Johnson Lane Corp.*, 500 U.S. 20, 29 (1991); *Mitsubishi Motors Corp. v. Soler Chrysler-*

13
*Plymouth, Inc.*, 473 U.S. 614, 628 (1985). In contrast, procedural rights are those which help secure

14
the substantive right.  *See CompuCredit*, 565 U.S. at 102-103 (describing the difference between

15
the statute's "guarantee" and the provisions contemplating ways to enforce the guarantee).

16
The explicit text, the statutory structure, and the context of the WARN Act inevitably lead

17
to the conclusion that the WARN Act contains two such guarantees: (1) a guarantee to receive (or

18
have one's representative receive) the required notice in the event of a plant closing or mass layoff,

19
*see* 29 U.S.C. § 2102 ("Section 2102"); and (2) a guarantee to be able to *collectively* pursue redress

20
for violations of Section 2102, 29 U.S.C. § 2104(a)(5).

21
As explained above, the plain language of the WARN Act states that the substantive "rights

22
and remedies provided to employees by this chapter" are non-waivable in contract. 29 U.S.C. §

23
2105; *see also* DOL Final Rule, 54 Fed. Reg. 16042, 16044; 20 C.F.R. § 639-1(g). The provision

24
for pursuing class relief is one of those non-waivable "rights and remedies provided to employees

25
by this chapter[.]" 29 U.S.C. §§ 2104(a)(5) & 2105. The fact that Congress specifically directed

26
that both the "rights and remedies" of the WARN Act be non-waivable itself constitutes a

27
legislative mandate that the right to pursue WARN Act violations on a class basis is an essential

28
protection of the WARN Act.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Such a reading also makes sense when placed in the context of the overall statutory scheme. As detailed above, the WARN Act is enforceable **only** through private class action lawsuits. If courts allowed employers to contractually remove the ability of employees to pursue collective WARN Act litigation (*i.e.*, the only enforcement mechanism in the statute), the effect would be to deprive employees of an essential protection of the statute. This much is demonstrated by the complete contractual nullification of WARN Act enforcement if the class litigation right is allowed to be contractually waived.

The context of the WARN Act further supports a class action substantive right found within the statute. An appropriate understanding of the WARN Act's passage is that Congress sought to take a subject then-"typically covered in collective bargaining agreements[,]" DOL Final Rule, 54 Fed. Reg. 16042, 16044, and then-negotiated through exercise of NLRA Section 7 rights, and to legislatively guarantee collective "rights and remedies" that could not be waived in contract. (*See* **Ex. 1** (Legislative History, at 731).)

Since the right to litigate WARN Act claims on a class basis is a non-waivable substantive right conferred by Section 2104(a)(5) and Section 2105, the Court should readily come to the conclusion that Uber's class waiver interferes with that substantive right and is thus "illegal" for purposes of the FAA's savings clause. *Mitsubishi Motors*, 473 U.S. at 637, fn.19 (stating if a contract term in an arbitration agreement "operate[s] … as a prospective waiver of a party's right to pursue statutory remedies for substantive rights, we would have little hesitation in condemning the agreement").

The WARN Act provides substantive non-waivable "rights and remedies" including the substantive right to collectively litigate alleged WARN Act violations. 29 U.S.C. §§ 2104(a)(5) & 2105. Uber's class waiver interferes with that substantive right and is therefore illegal, triggering the FAA's savings clause. 9 U.S.C. § 2.

C. **The Court Should Rule On The Validity of the Class Action Waiver First**

Uber also argues that the arbitrator should first decide whether Todd Johnston is an employee before the Court determines the validity of the waiver.  This is incorrect.  First, the 2015

Agreement explicitly provides the Court with the authority to determine the validity of the class action waiver. This is just as much a part of the contract between Uber and Mr. Johnston as the arbitration provision. The contract envisions the situation where a driver – even one classified by Uber as an independent contractor – may file a suit in court as a putative class action disputing the enforceability of the waiver:

> Notwithstanding any other provisions of this Agreement, the Arbitration Provision or the JAMS Streamlined Arbitration Rules & Procedures, disputes regarding the enforceability, revocability or validity of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator. In any case in which (1) the dispute is filed as a class, collective, or representative action and (2) there is a final judicial determination that all or part of the Class Action Waiver is unenforceable, the class, collective, and/or representative action to that extent must be litigated in a civil court of competent jurisdiction . . . .

(Dkt. No. 110-1, at 55 of 87, §15.3.v.)

Where the waiver is found invalid, the agreement provides that the action <u>must</u> be litigated in civil court. Adopting Uber's procedure would run afoul of this expressed contractual provision and effectively enforce the class waiver because each putative employee would have to go to individual arbitration in order to be declared an employee to be able to participate in the class.

In addition, Uber's class waiver is so broad that it purports to prohibit individuals from even participating in a class action. Accordingly, even if Mr. Johnston returns to this court from arbitration with employee status (as opposed to putative employee status), Uber's class waiver would still prohibit class litigation. In order for a class case to proceed, according to Uber, each individual would have to individually be determined to be an employee (subject to inconsistent varied outcomes) and would then have to return to this Court to have the class waiver declared invalid as to each. Only at that point, according to Uber, could such individuals participate in Mr. Johnston's class case. Such a procedure would effectively turn the WARN Act into an opt-in statute, contrary to the language of the statute and intention of the drafters.

A second reason for rejecting Uber's argument is that Section 2104(a)(5) allows "persons" – not just employees – to sue for a WARN Act violation, indicating that putative employees may

do so.  For these reasons, the Court should rule first on whether the class action waiver as applied to this WARN Act claim is enforceable.[4]

### D.  **Because the Class Waiver Is Unenforceable, This Case Must Remain In Civil Court Under The Express Terms of the 2015 Agreement**

The WARN Act contains clearly discernible statutory language creating a non-waivable substantive right to pursue violations of the WARN Act in a collective proceeding, *see* 29 U.S.C. §§ 2104(a)(5) and 2105, and to do so in federal court, §§ 2104(a)(5) and 2104(b). The legislative history and purpose of the WARN Act (namely, to legislatively carve out and protect from contract an area that was traditionally subject to employment contracts, 29 U.S.C. § 2105) as well as the DOL's interpretations of the statute's objective and text confirm that Sections 2104(a)(5) and 2105 create a non-waivable substantive right to collectively litigate WARN Act claims.

By contrast, the FAA's interest in enforcing the *individual* aspect of Uber's Arbitration Agreement is comparatively negligible. The FAA evidences a federal policy favoring arbitration, and not a policy favoring individual proceedings over class proceedings.

In this case, the Court need not examine FAA's stance on class arbitration proceedings. The FAA's interest is in enforcing the terms of arbitration agreements, and in this case those terms unambiguously and undisputedly require that the case proceed in civil court if the class action waiver is held unenforceable.  (Dkt. No. 110-1, at 55 of 87, §15.3.v (where "(1) the dispute is filed as a class, collective, or representative action and (2) there is a final judicial determination that all or part of the Class Action Waiver is unenforceable, the class, collective, and/or representative action to that extent must be litigated in a civil court of competent jurisdiction").)

As numerous courts have recognized, the policy favoring arbitration agreements only requires that courts place such agreements on "equal footing with other contracts … and enforce them according to their terms[.]" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted). The FAA's purpose is "to make arbitration agreements as enforceable as other

---

[4] Uber cites to *Richemond v. Uber Technologies, Inc.*, 263 F.Supp.3d 1312 (S.D. Fla. 2017), but that case is distinguishable for several reasons:  the plaintiff apparently did not raise the class action waiver issue; it was not a WARN Act case but an FLSA case; and the plaintiff relied on the NLRA to invalidate the agreement, which Plaintiff here does not.

Plaintiff's Opposition to Defendant's Renewed Motion To Compel Arbitration - Case No. 3:16-cv-3134-EMC

contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 & n.12 (1967).

If the Court finds, for the reasons stated above, that the WARN Act contains a "contrary congressional command" that overrides whatever interest the FAA has in enforcing an *individual* arbitration proceeding or a non-waivable substantive right to collective WARN Act litigation, pursuant to the terms of the 2015 Agreement, the case must remain in civil court. Uber agrees that the enforceability of the class waiver is an issue properly before the Court.

Assuming the Court finds Uber's class waiver unenforceable, the Court need not examine the arbitrability delegation issue. Pursuant to the terms of the agreement, the case must proceed in civil court and not in arbitration.

E. <u>The District Court Opinions in the Three Cases Cited by Uber Offer No Persuasive Authority</u>

Uber cites three (3) district court opinions (two out of the same district) in support of its position that the WARN Act does not provide an overriding contrary congressional command or non-waivable substantive right to collective litigation. *Chambers v. Groome Transp. of Ala.*, 41 F. Supp. 3d 1327 (M.D. Ala. 2014); *Sides v. Macon Cnty. Greyhound Park, Inc.*, No. 3:10cv895, 2011 WL 2728926 (M.D. Ala. 2011); *Green v. Zachary Indus., Inc.*, 36 F. Supp. 3d 669 (W.D. Va. 2014). These cases are of no support to Uber.

In *Chambers*, the court was presented with the argument that "any restriction in the [a]rbitration [a]greement on their right to pursue a class action is *unconscionable under Alabama law*." 41 F. Supp. at 1350 (emphasis added). The remainder of the plaintiff's argument was characterized by the court as "largely … a policy argument." *Id.* at 1353. Plaintiff's argument in the instant case – that the WARN Act supplies a federal contrary congressional command overriding the FAA and/or that the WARN Act provides for a federal substantive right to litigate WARN claims collectively – was neither briefed nor taken up by the *Chambers* court. In fact, the phrases "contrary congressional command" and "substantive right" appear zero times in both the district court's opinion and in the plaintiff's briefing. *See Chambers*, No. 3:14cv237, Dkt. No. 18 (M.D. Ala. filed June 24, 2014) (attached as **Ex. 2**).

The relevant discussion in the *Sides* opinion was restricted to one short paragraph containing little analysis and offering little value to the Court's consideration of Plaintiff's arguments herein. *Sides*, 2011 WL 2728926, at *4-5. Similar to *Chambers*, the argument presented related to "public policy grounds" as stated by the court in its header on the discussion. *Id.* (header of discussion titled "Arbitration Agreement Is Not Void on Public Policy Grounds"). And like *Chambers*, neither the *Sides* court's circumscribed discussion nor the plaintiff's brief contained any reference to "contrary congressional command" or to "substantive right" whatsoever. *Id.*; *see also Sides*, No. 3:10cv895, Dkt. No. 29 (M.D. Ala. filed Jan. 5, 2011) (attached as **Ex. 3**).

In *Green*, the plaintiff argued that the arbitration agreement "is unenforceable because it violates the [NLRA.]" 36 F. Supp. 3d at 674. The court then explicitly relied upon conflicting circuit precedent to reject the argument. *Id.* at 675 ("Persuaded by the Fifth Circuit's reasoning in *D.R. Horton, Inc.* and the weight of available authority, the court finds that the [arbitration] agreement, which contains an implied class waiver, does not violate the NLRA[.]") *Green* is not at all on point because Plaintiff's position is that the WARN Act *itself* provides the contrary congressional command and/or non-waivable substantive right to litigate WARN Act claims collectively.

As detailed above, the cases cited by Uber are of no value the Court in addressing Plaintiff's arguments set forth in this brief.

## V.   CONCLUSION

For the foregoing reasons, the WARN Act supplies contrary congressional commands consisting of statutorily non-waivable rights to collectively litigate WARN Act claims in federal court that override the FAA, and/or the WARN Act provides for a non-waivable substantive right to collectively litigate WARN Act claims. The Court should find Uber's class action waiver unenforceable and void and deny Uber's Renewed Motion to Compel Arbitration.

///

///

///

Dated: July 25, 2019

Respectfully submitted,

/s/ John R. Davis

Michael L. Slack (Tex. Bar No. 18476800)
mslack@slackdavis.com
*Pro Hac Vice*
John R. Davis (Cal. Bar No. 308412)
jdavis@slackdavis.com
*Pro Hac Vice*
SLACK DAVIS SANGER, LLP
2705 Bee Cave Road, Suite 220
Austin, TX 78746
512-795-8686
512-795-8787 (fax)

/s/ Brian J. Malloy

Thomas J. Brandi (Cal. Bar No. 53208)
tjb@brandilaw.com
Brian J. Malloy (Cal. Bar No. 234882)
bjm@brandilaw.com
THE BRANDI LAW FIRM
354 Pine Street, Third Floor
San Francisco, CA 94104
415-989-1800
415-989-1801 (fax)

Plaintiff's Opposition to Defendant's Renewed Motion To Compel Arbitration - Case No. 3:16-cv-3134-EMC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I, Brian J. Malloy, hereby certify that on July 25, 2019, I caused to be electronically filed a true and correct copy of the following documents with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to counsel of record:

**Plaintiff's Opposition to Defendant's Renewed Motion to Compel Arbitration**

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.  Executed this 25th day of July, 2019 at San Francisco, California.

_____/s/ Brian J. Malloy_____
BRIAN J. MALLOY