UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD JOHNSTON,<br><br>    Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>    Defendant. | Case No. 16-cv-03134-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL INDIVIDUAL ARBITRATION**<br><br>Docket No. 110 |

## I.     INTRODUCTION

Plaintiff Todd Johnston ("Plaintiff") filed a class action lawsuit against Defendant Uber Technologies, Inc. ("Defendant"). Mr. Johnston asserts one cause of action: a violation of the WARN Act, 29 U.S.C. § 2102 *et seq.* He contends that Uber Technologies violated the WARN Act when it ceased operations in Austin, Texas without providing WARN Act notice to drivers at least 60 days in advance. Uber argues that this matter is not properly before the Court because Mr. Johnston agreed to bring this dispute in arbitration.

In April 2017, Defendant filed a Motion to Compel Arbitration. On June 22, 2017, the Court stayed this matter because of pending appeals at the Ninth Circuit regarding the validity of Defendant's arbitration agreements (*O'Connor et al. v. Uber Technologies, Inc.*, Ninth Circuit Case No. 15-17475). In March 2018, the Court administratively denied without prejudice Defendant's Motion to Compel Arbitration because of the length of the pendency of the *O'Connor* appeal. In September 2018, the Ninth Circuit reversed this Court's Order denying Uber's Motion to Compel Arbitration in *O'Connor*. On July 11, 2019, Defendant refiled a Motion to Compel Arbitration ("Motion"). Defendant asks that the Court "order Plaintiff to individually arbitrate his claims against Defendants [sic] and dismiss his Complaint." Plaintiff asks that the Court "find

Uber's class action waiver unenforceable and void and deny Uber's Renewed Motion to Compel Arbitration."

## II. FACTUAL AND PROCEDURAL BACKGROUND

A. Complaint

According to the Class Action Complaint, Mr. Johnston "is a citizen of Texas, domiciled in Austin, Texas." Class Action Complaint ("Complaint") ¶ 1; Docket No. 1. Uber "is a San Francisco, California-based car service promoting itself as a transportation networking company." *Id.* ¶ 6. Uber "began operating in Austin, Texas on or about June 3, 2014." *Id.* ¶ 8. Mr. Johnston "began working as an Uber driver starting in May 2015," and he continued to drive "for Uber as his primary source of income until May 9, 2016." *Id.* ¶ 1. On May 9, 2016, after losing a public referendum to repeal an ordinance requiring transportation network companies—including Uber—to beef up their background check procedures, Uber decided to immediately terminate operations in Austin. *Id.* ¶¶ 10–13.

The complaint alleges that "thousands of Austin Uber Drivers . . . lost their jobs and incomes" as a result. *Id.* ¶ 14. At the time Uber stopped its Austin-based operations, "Uber officials asserted that Uber had over 10,000 Drivers in Austin." *Id.* ¶ 9. Mr. Johnston contends that he and other class members are "employees" of Uber, and that they were "entitled to WARN Act notice" as "affected employees." *Id.* ¶¶ 15–17. Under the WARN Act, affected employees are entitled to "sixty (60) days notice prior to effectuating either a 'plant closing' or 'mass layoff.'" *Id.* ¶ 21; 29 U.S.C § 2102. A violation of the Act "occurs when an employer does not provide the proper notice within the proper timeframe." Complaint ¶ 22.

B. The Arbitration Agreement

At issue in this case is whether the parties' Arbitration Agreement requires this dispute to be settled before an arbitrator on an individual basis. Defendant alleges that "Plaintiff signed up to use the Uber App to generate leads for potential riders . . . in Austin, Texas, and his account was activated on May 22, 2015." Motion at 4. He could not use the app without "accept[ing] the applicable [Software License & Online Services] agreement with Rasier [a wholly-owned subsidiary of Uber]." *Id.* At the time of Plaintiff's account activation, "the applicable agreement

was the November 2014 Rasier Agreement." *Id.* To accept the agreement, Plaintiff had to sign into the app and click "YES, I AGREE" when prompted to confirm his acceptance of the agreement two times. *Id.* Defendant contends that the agreement "was available for review by clicking a hyperlink presented on the screen. . . . [And] Plaintiff was free to spend as much time as he wished reviewing the November 2014 Rasier Agreement." *Id.* Plaintiff accepted the November 2014 Agreement on the same day he activated his account. *Id.* That agreement contained an arbitration provision, and Plaintiff did not opt out of that provision. *Id.* at 4–5.

"In December 2015, Uber rolled out a revised agreement." *Id.* at 5. Prior to the rollout, "drivers were sent an e-mail notifying them of the new agreement and Arbitration Provision contained therein." *Id.* Defendant alleges that Plaintiff "accepted the December 2015 [Agreement] through the Uber App on December 15, 2015, using the same process [as for the November 2014 Agreement]." *Id.* Defendant contends that the December 2015 Agreement "is the operative agreement in this matter." *Id.* Uber further contends that Plaintiff "could have opted out [of the Arbitration Provision] using a variety of methods, including by simply sending an email to optout@uber.com." *Id.* at 6. But Plaintiff "did not opt out of arbitration," although "thousands of drivers have opted out of one or more of the arbitration provisions contained in the various agreements in place between Uber and the drivers who use the Uber App." *Id.* at 7.

The relevant text of the Arbitration Provision is as follows:

> This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA") and evidences a transaction involving interstate commerce. This Arbitration Provision applies to any dispute arising out of or related to this Agreement or termination of the Agreement and survives after the Agreement terminates...
>
> **Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before any forum other than arbitration, with the exception of proceedings that must be exhausted under applicable law before pursuing a claim in a court of law or in any forum other than arbitration. Except as it otherwise provides, this Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative (non-PAGA) action.**
>
> Except as provided in Section 15.3(v), below, regarding the Class

Action Waiver, such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision....

Notwithstanding any other provision of this Agreement . . . disputes regarding the enforceability, revocability or validity of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator.

Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to all disputes between You and Uber[ ]... including but not limited to any disputes arising out of or related to this Agreement and disputes arising out of or related to Your relationship with Uber, including termination of the relationship. This Arbitration Provision also applies, without limitation, to disputes regarding any city, county, state or federal wage-hour law, ... termination, ... and state statutes, if any, addressing the same or similar subject matters, and all other similar federal and state statutory and common law claims.

**Arbitration is not a mandatory condition of your contractual relationship with the Company. If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision by notifying the Company in writing of your desire to opt out of this Arbitration Provision, either by (1) sending, within 30 days of the date this Agreement is executed by you, electronic mail to optout@uber.com, stating your name and intent to opt out of the Arbitration Provision or (2) by sending a letter by U.S. Mail, or by any nationally recognized delivery service (e.g, UPS, Federal Express, etc.), or by hand delivery to:**

> **Legal Rasier, LLC**
> **1455 Market St., Ste. 400**
> **San Francisco CA 94103**

**In order to be effective, the letter under option (2) must clearly indicate your intent to opt out of this Arbitration Provision, and must be dated and signed. The envelope containing the signed letter must be received (if delivered by hand) or post-marked within 30 days of the date this Agreement is executed by you. Your writing opting out of this Arbitration Provision, whether sent by (1) or (2), will be filed with a copy of this Agreement and maintained by the Company. Should you not opt out of this Arbitration Provision within the 30-day period, you and the Company shall be bound by the terms of this Arbitration Provision. You have the right to consult with counsel of your choice concerning this Arbitration Provision. You understand that you will not be subject to retaliation if you exercise your right to assert claims or opt-out of coverage under this Arbitration Provision.**

Declaration of Jennifer Sinha ("Sinha Decl."), Ex. F (bold in the original), Docket No. 110-1.

Defendant further alleges that the following notice appears immediately prior to the December 2015 Arbitration Provision:

> IMPORTANT: This Arbitration Provision will require you to resolve any claim that you may have against the Company or Uber on an individual basis, except as provided below, pursuant to the terms of the Agreement unless you choose to opt out of the Arbitration Provision. Except as provided below, this provision will preclude you from bringing any class, collective, or representative action (other than actions under the Private Attorneys General Act of 2004 ("PAGA"), California Labor Code § 2698 et seq. ("PAGA")) against the Company or Uber, and also precludes you from participating in or recovering relief under any current or future class, collective, or representative (non-PAGA) action brought against the Company or Uber by someone else.
>
> ***Cases have been filed against Company or Uber and may be filed in the future involving claims by users of the Service, including by drivers. You should assume that there are now, and may be in the future, lawsuits against Company or Uber alleging class, collective, and/or representative (non-PAGA) claims on your behalf, including but not limited to claims for tips, reimbursement of expenses, and employment status. Such claims, if successful, could result in some monetary recovery to you. ...***
>
> **The mere existence of such class, collective, and/or representative lawsuits, however, does not mean that such lawsuits will ultimately succeed. But if you do agree to arbitration with the Company, you are agreeing in advance, except as otherwise provided, that you will not participate in and, therefore, will not seek to recover monetary or other relief under any such class, collective, and/or representative (non-PAGA) lawsuit....**
>
> **WHETHER TO AGREE TO ARBITRATION IS AN IMPORTANT BUSINESS DECISION. IT IS YOUR DECISION TO MAKE.... YOU SHOULD TAKE REASONABLE STEPS TO CONDUCT FURTHER RESEARCH AND TO CONSULT WITH OTHERS – INCLUDING BUT NOT LIMITED TO AN ATTORNEY – REGARDING THE CONSEQUENCES OF YOUR DECISION, JUST AS YOU WOULD WHEN MAKING ANY OTHER IMPORTANT BUSINESS OR LIFE DECISION.**

*Id.* (bold, underlining, and italics in the original).

C. <u>Procedural Background</u>

As stated above, Uber has filed a Motion to Compel Arbitration. Docket No. 110. This is Defendant's second Motion to Compel Arbitration; in April 2017, Defendant filed its first Motion to Compel Arbitration. Docket No. 66. On June 22, 2017, the Court stayed this matter because of

pending appeals at the Ninth Circuit dealing with the validity of Uber's arbitration agreements. Docket No. 77. In March 2018, the Court administratively denied without prejudice Defendant's Motion to Compel Arbitration because of the "uncertainty of the length of [the *O'Connor*] appeals." Docket No. 89. In September 2018, the Ninth Circuit reversed this Court's Order denying Uber's Motion to Compel Arbitration in *O'Connor*. In or around September 2018, the parties met and conferred "regarding the impact of the Ninth Circuit's *O'Connor* decision on this case," Docket No. 98, but they did "not reach[] an agreement" on that issue, Docket No. 107. Currently before the Court is Defendant's renewed Motion to Compel Arbitration.

### III. DISCUSSION

A. Legal Standard

"Congress [has] directed courts to abandon their hostility and instead treat arbitration agreements as 'valid, irrevocable, and enforceable.' . . . The [Federal Arbitration] Act, [the U.S. Supreme] Court has said, establishes 'a liberal federal policy favoring arbitration agreements.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (citing 9 U.S.C. § 2). Under the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 825 (9th Cir. 2019) (quoting 9 U.S.C. § 2). Thus, courts "must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations omitted).

To determine "the validity of an arbitration agreement, federal courts apply state law contract principles." *Lau v. Mercedes-Benz USA, LLC*, No. CV 11-1940 MEJ, 2012 WL 370557, at *2 (N.D. Cal. Jan. 31, 2012) (citing *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) ("Because [Plaintiff] was employed in California, we look to California contract law to determine whether the agreement is valid.")). Thus, arbitration agreements may "be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement

to arbitrate is at issue." *Concepcion*, 563 U.S. at 339.

Typically, "the question whether an issue is arbitrable . . . is 'an issue for judicial determination . . . .'" *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (citing *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013)). In other words, "there is a presumption that courts will decide which issues are arbitrable; the federal policy in favor of arbitration does not extend to deciding questions of arbitrability." *Oracle Am., Inc.*, 724 F.3d at 1072. However, where "the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate" may be decided by an arbitrator. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). "Such clear and unmistakable evidence of agreement to arbitrate arbitrability might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so." *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011).

Arbitration agreements may also contain waivers of class action procedures that require parties to pursue their claims individually. "In the Federal Arbitration Act, Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." *Epic Sys.*, 138 S. Ct. at 1619. Furthermore, the Supreme Court has stated that "an argument that a contract is unenforceable *just because it requires bilateral arbitration* . . . is one that impermissibly disfavors arbitration . . . ." *Id.* at 1623. However, a class action waiver may be obviated—as Plaintiff's ask the Court to find here—where an applicable statute overrides the FAA or triggers its savings clause. In the first instance, the Court must find that "the FAA's mandate has been 'overridden by a contrary congressional command,'" *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). To make such a showing, a party "must demonstrate that Congress intended to make an exception to the Arbitration Act for claims arising under [the act in question], an intention discernible from the text, history, or purposes of the statute." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 227 (1987). In the latter instance, the FAA's savings clause (which states that agreements to arbitrate shall be valid, irrevocable, and enforceable, "save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C.A. § 2) applies when an Arbitration Agreement is,

7

*e.g.*, invalid for reasons that apply to contract enforcement generally (such as when a contract term is unconscionable).

B. <u>Analysis</u>

The parties in this case do not disagree about whether the FAA is implicated in their controversy. The parties agree that Plaintiff signed Uber's Arbitration Agreement and did not subsequently opt out. *See* Motion at 4–8. Furthermore, Plaintiff does not allege that fraud, duress, or unconscionability create a basis for invalidating the entire Arbitration Agreement.

Instead, the key disagreement pertains to whether the Court should enforce the Arbitration Agreement and order Plaintiff to individually arbitrate his claims or find the class action in the Arbitration Agreement unenforceable because it conflicts with the WARN Act. Whether the WARN Act applies hinges on whether Plaintiff and other drivers are properly classified as employees or independent contractors, because only employees are covered by the WARN Act; independent contractors are not.

Whether the case may be litigated in the district court or should proceed instead to arbitration turns first on the order of the issues to be decided. Uber argues that the question of employee versus independent status of Mr. Johnston should be decided in arbitration. Since that is a dispute regarding the relationship between Mr. Johnston and Uber, Uber contends that question falls within the purview of the Arbitration Agreement. Thus, Uber seeks to "enforce the parties' agreement as written, compel the threshold [employment] status question to arbitration, and stay the remainder of the case." Motion at 17. Plaintiff, on the other hand, urges the Court first to address the validity of the Class Action Waiver, a matter for the Court, not the arbitrator, to decide under the Agreement. *See* Plaintiff's Opposition Brief ("Opposition") at 18; Docket No. 112. In particular, Plaintiff asks the Court to decide the substantive law question whether the WARN Act supersedes or displaces the FAA's mandate on enforcing arbitration and invalidate the Class Action Waiver.

Although employee status is a threshold question upon which application (and hence enforcement) of the WARN Act is predicated, both parties agreed at the hearing that it would *not* be appropriate for the Court to decide that issue. That agreement by the parties is consistent with

8

the Arbitration Agreement herein. The "Arbitration Provision clearly and unmistakably provides that . . . the arbitrator must decide all disputes . . . including the enforceability, revocability or validity of the Arbitration Provision." Motion at 10. Moreover, to the extent arbitrability of the WARN Act claim turns in part upon whether Plaintiff is an employee (and thus has standing to assert a claim under the WARN Act), Plaintiff's status informs arbitrability. Under the Delegation Clause, issues "arising out of or relating to" the enforceability of the Arbitration Agreement are to be decided by the arbitrator. The Ninth Circuit has already found the question of arbitrability under the Uber agreements is for the arbitrator and that the Delegation Clause is not unconscionable. *O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1094-95 (9th Cir. 2008).

Although under the Uber agreement, the question of the validity of class waivers is to be decided by "a civil court of competent jurisdiction," the Court cannot properly reach that legal question regarding the relationship between the WARN Act and the FAA until the threshold finding is made that Plaintiff is an employee (who is subject to the WARN Act's protection). Since, as the parties agree, that threshold question is a matter for the arbitrator, the status question is properly referred to arbitration. If the arbitrator determines that Plaintiff is properly classified as an Uber employee—such that Plaintiff would qualify for the protections of the WARN Act—the arbitrator must send the case back to this Court for a determination whether the Class Action Waiver is valid in light of the WARN Act. If the arbitrator determines that Plaintiff is properly classified as an independent contractor, the arbitrator may retain jurisdiction over the rest of the case since the WARN Act would not impede arbitration under that circumstance.

///
///
///
///
///
///
///
///

9

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Compel Arbitration as to the question of whether Plaintiff is an employee or independent contractor. If the arbitrator finds Plaintiff is/was an employee, the matter shall be referred back to this Court to determine the validity of the Class Action Waiver.

This order disposes of Docket No. 110.

**IT IS SO ORDERED**.

Dated: September 16, 2019

EDWARD M. CHEN
United States District Judge